IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MARSHA LILLY )
)
v. ) NO. 3-10-1178
) JUDGE CAMPBELL
CITY OF CLARKSVILLE, et al. )

MEMORANDUM

Pending before the Court are Defendant City of Clarksville's Motion for Summary Judgment (Docket No. 20) and Defendants Ansley and Ashby's Motion for Summary Judgment (Docket No. 22). For the reasons stated herein, Defendants' Motions for Summary Judgment are GRANTED, and this action is DISMISSED.

INTRODUCTION

Plaintiff has conceded that any claims against Defendant Ansley in his official and individual capacities should be dismissed (Docket No. 42), so all claims against Defendant Ansley are DISMISSED.

Plaintiff has conceded that she cannot bring a claim for punitive damages against the City (Docket No. 35), so that claim against Defendant City of Clarksville is DISMISSED.

Plaintiff has also conceded that her claims for tortious interference with business relations and civil rights violations related to her business, Club 808, are barred by the one-year statute of limitations (Docket No. 35), so Plaintiff's tortious interference with business relations claims, THRA claims and claims brought pursuant to 28 U.S.C. § 1983 ("Section 1983"), as they relate to Club 808, against all Defendants are DISMISSED.

Plaintiff has not responded to the Defendant City's claim that it is immune, pursuant to the Tennessee Governmental Tort Liability Act ("TGTLA") for Plaintiff's defamation claim.[1] Neither has she responded to Defendant Ashby's arguments concerning the defamation claim. The Court notes that any claim for defamation arising from statements made prior to December 13, 2009, would be time-barred. Tenn. Code Ann. §§ 28-3-103 and 28-3-104(a). Moreover, as shown below, Plaintiff has not shown that the alleged statements were false and, therefore, they were not defamatory. Accordingly, Plaintiff's defamation claim against all Defendants is DISMISSED.

Plaintiff has conceded that her claims against Defendant Ashby in his official capacity should be dismissed (Docket No. 42), so Plaintiff's claims against Defendant Ashby in his official capacity are DISMISSED.

Finally, Plaintiff has not pled a claim for violation of free speech rights or retaliation or a claim related to a state investigation of her security at Club 808[3] in her Complaint (Docket No. 1), so her arguments concerning such claims cannot be considered.

## FACTS

Plaintiff is an African-American citizen of Montgomery County, Tennessee. Plaintiff was the owner of a sports bar known as 808 Sports Bar and Grille, located in Clarksville, Tennessee. After she sold the sports bar, Plaintiff took a job in August of 2009 as a criminal investigator with the Military Police Detachment, Fort Campbell CID.

---

[1] Failure to respond to a motion indicates that there is no opposition to the motion. Local Rule 7.01.

[3] Given the alleged dates concerning this investigation, it appears that any claim based thereon would also be barred by the applicable statute of limitations.

Defendants are the City of Clarksville, Tennessee, and a law enforcement officer employed by the City of Clarksville, Defendant Ashby.

Plaintiff's remaining claims, those arising after her sale of Club 808, relate to her job as a criminal investigator with the Military Police Detachment, Fort Campbell CID. Plaintiff contends that Defendants contacted Plaintiff's employer at Fort Campbell and made false, defamatory statements about Plaintiff, which resulted in her firing.[4] Docket No. 1.

Defendants argue that they believed Plaintiff was associated with a known drug dealer in Clarksville, DeShawn Wentz. During the execution of a search warrant at Wentz's residence, Clarksville police officers found a copy of Plaintiff's lease for Club 808, a copy of a cashier's check from Plaintiff as a security deposit, and a document regarding Club 808 equipment signed by Wentz. Docket No. 38, ¶ 63.

Defendants do not dispute that one of their agents (not a Defendant herein) told a TBI agent (also not a Defendant herein) about the documents found at Wentz's residence. *Id*., ¶ 65. Defendants also admit their agents (not Defendants herein) relayed the same information about Wentz and Plaintiff, including copies of the documents found at Wentz's residence, to agents from Fort Campbell (also not Defendants herein). *Id*., ¶¶ 67 - 69. Defendants admit that Defendant Ashby told the CID agents that he would not share any confidential case information with them while Plaintiff worked for them, due to her apparent connection with a known drug dealer. *Id*., ¶ 70. Defendants deny that they refused to work with the Fort Campbell CID at all. Docket No. 44, ¶ 42.

---

[4] Defendants allege that these conversations occurred in November of 2009. Docket No. 26.

Plaintiff claims that, as a result of Defendants' false and defamatory statements, she was fired from the job at Fort Campbell. Docket No. 1. Plaintiff was put on administrative leave from this job on December 17, 2009, and was fired on January 4, 2010. Docket No. 38, ¶ 39.

Plaintiff's Complaint alleges that Defendants (1) violated her rights under the First and Fourteenth Amendments through, among other things, harassment, discrimination, defamation, arbitrary governmental activity and selective enforcement; (2) violated her rights under 28 U.S.C. § 1981 ("Section 1981") based upon her race; (3) published false and defamatory statements about her; (4) maliciously harassed her; (5) tortiously interfered with her business relations; and (6) violated the Tennessee Human Rights Act ("THRA") by discriminating against her because of her race. Docket No. 1.

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the

4

evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## SECTION 1981

To the extent Plaintiff still claims violations of Section 1981 against Defendant City of Clarksville, those claims must be dismissed. The Supreme Court has held that Section 1981's implicit cause of action does not extend to suits brought against municipalities. *Arendale v. City of Memphis*, 519 F.3d 587, 598-99 (6th Cir. 2008); *Neal v. Shelby County Government Community Service Agency*, 815 F.Supp.2d 999, 1006-07 (W.D. Tenn. 2011). Thus, Plaintiff's Section 1981 claims against Defendant City of Clarksville are DISMISSED.

Plaintiff has failed to respond to Defendant Ashby's arguments concerning her Section 1981 claim, indicating there is no opposition thereto. Moreover, as set forth below, there is insufficient evidence that Defendant Ashby's statement was motivated by race. For these reasons, Plaintiff's Section 1981 claim against Defendant Ashby is DISMISSED.

## SECTION 1983

Plaintiff claims that Defendants violated her constitutional rights under the First and Fourteenth Amendments. As Plaintiff has conceded, this claim is limited to actions or inactions

5

occurring after December 13, 2009,[5] after she sold Club 808, so the allegations concerning Club 808 are not considered.

To prove a Section 1983 claim, Plaintiff must establish that: (1) she was deprived of a right secured by the United States Constitution or laws; and (2) the deprivation was caused by a person acting under color of state law. Spurlock v. Whitley, 971 F.Supp. 1166, 1175 (M.D. Tenn. 1997). There is no dispute that the Defendants were acting under color of state law at all relevant times.

With regard to Defendant City of Clarksville, to establish municipal liability under Section 1983, Plaintiff must establish that her harm was caused by a constitutional violation and that a policy or custom of the municipality was the "moving force" behind the deprivation of her rights. *Miller v. Sanilac County,* 606 F.3d 240, 255 (6th Cir. 2010); *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). A municipality cannot be held liable under a *respondeat superior* theory merely because one or more of its employees may have committed a constitutional tort. *Taylor v. Michigan Dept. of Corrections,* 69 F.3d 76, 80-81 (6th Cir. 1995).[6]

Plaintiff contends that she can prove a constitutional claim under a policy, practice or custom theory. Plaintiff alleges that Defendant City of Clarksville's failure to properly train, supervise and discipline its employees constitutes official tolerance of employees' misconduct, for which the City

---

[5] The statute of limitations for Section 1983 claims is the state statute of limitations applicable to personal injury actions under the law of the state in which the alleged Section 1983 claim arises. *Eidson v. State of Tennessee Dept. of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In Tennessee, that statute of limitations is one year. Tenn. Code Ann. § 28-3-104(a)(3).

[6] Municipalities are liable for harms resulting from a constitutional violation only when the injury resulted from an implementation of the municipality's official policies or established customs. *Spears*, 589 F.3d at 256. Plaintiff must also demonstrate a direct causal link between the policy and the alleged constitutional violation in order to show that the municipality's deliberate conduct can be deemed the "moving force" behind the violation. *Spears*, 589 F.3d at 256.

is liable. A systematic failure to train police officers adequately is a custom or policy which can lead to municipal liability. *Miller*, 606 F.3d at 255. The inadequacy of police training only serves as a basis for Section 1983 liability, however, where the failure to train amounts to "deliberate indifference" to the rights of persons with whom the police come into contact. *Id*. To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the municipality has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury. *Id*.

Plaintiff asserts that there is a historical pattern of race discrimination within the Clarksville Police Department which shows a clear and persistent pattern of civil rights violations sufficient to give notice that police training was deficient and likely to cause injury. The actions at issue here are the alleged false and defamatory statements Defendant's employees made to Plaintiff's employer at Fort Campbell. Even if the alleged pattern of race discrimination were sufficient to constitute a custom of policy of inadequate training, supervision or discipline by the City, Plaintiff has not shown that anything about the alleged statements to the Fort Campbell agents had to do with her race[7] or arose from inadequate and "deliberately indifferent " training, supervision or discipline.

Plaintiff also claims that the City is liable for the decisions made by an official with final policymaking authority and that Defendant Ashby had full authority to make the statements he made

---

[7] Plaintiff's allegations about race had to do with the alleged harassment at her business, Club 808, which claims have been dismissed.

to the CID agents.[8] Therefore, Plaintiff avers, Ashby's statements represented a policy position on behalf of the Clarksville Police Department. Docket No. 35.

Ashby's statement, as reported in the Army Memorandum dated December 11, 2009 (Docket No. 40-3), that he would never provide any reports/information concerning any Clarksville Police Department investigations to Plaintiff and would document that in writing if needed, is not a false statement. The statement that Plaintiff was somehow connected to Mr. Wentz is not false either - Plaintiff admits that she hired Wentz to do work at her business, that he was a cousin of one of her friends, that he worked for a company which delivered some of the equipment for Club 808, and that officers found a copy of Plaintiff's lease, a copy of a cashier's check from Plaintiff, and a document regarding equipment for Plaintiff's business, signed by Wentz. Docket Nos. 38 and 43.

The Court finds that Ashby's statement did not violate Plaintiff's constitutional rights. Even if the Clarksville Police Department had a policy not to provide confidential information to persons suspected of being connected to criminal activity, that policy did not violate Plaintiff's constitutional rights. The officers' representations that they had found documents related to Plaintiff in Mr. Wentz's residence have nothing to do with Plaintiff's race and are not false.

The Supreme Court has suggested that a protected liberty interest may be implicated by certain injuries to a person's reputation or good name which threaten to restrain the individual's freedom to pursue business or employment opportunities. *Wisconsin v. Constantineau,* 400 U.S. 433, 437 (1971); *Med Corp., Inc. v. City of Lima* 296 F.3d 404, 413-414 (6th Cir.2002). The situations

---

[8] The persons who initially conveyed information to the CID agents about Plaintiffs' alleged connection with Wentz are not Defendants in this action. Defendant Ashby's only alleged communication was later, telling the CID agents he would not share confidential information with them if Plaintiff worked there. Docket No. 38, ¶¶ 65-70.

in which such injuries to reputation will give rise to a Fourteenth Amendment claim are limited, however. The Fourteenth Amendment does not transform all tort-law defamation claims against the state into constitutional violations. *Id.* at 414.

To the extent Plaintiff claims a Fourteenth Amendment deprivation of a liberty interest in her reputation by Defendant Ashby's statement, she must demonstrate five elements: (1) the statement was made in connection with the loss of a governmental right, benefit or entitlement; (2) the Defendant made defamatory statements that would foreclose Plaintiff's freedom to take advantage of other employment opportunities; (3) the stigmatizing statements or charges were made public; (4) that the charges made against her were false; and (5) that the public dissemination was voluntary. *Med Corp.,* 296 F.3d at 413-414.

Plaintiff has not shown that the statement by Defendant Ashby was defamatory or false. Neither has she shown that Ashby's statement was publicly disseminated or would foreclose her freedom to take advantage of other employment opportunities. Therefore, the claim for violation of a liberty interest in her reputation cannot stand.

To the extent Plaintiff is still bringing a substantive due process claim against Defendant Ashby, her Response (Docket No. 42) appears to limit that claim to First Amendment free speech and retaliation claims. The Court has found that no First Amendment free speech or retaliation claim was pled in this case. In any event, in order to succeed on a substantive due process claim, Plaintiff would have to show that the alleged misconduct by Defendant Ashby "shocks the conscience" of the Court. *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 35 (6th Cir. 1992). The statement by Defendant Ashby to the Fort Campbell agents does not rise to the level of shocking the conscience of the Court.

9

For all these reasons, Defendants' Motions for Summary Judgment on Plaintiff's Section 1983 claims are GRANTED, and those claims are DISMISSED.

MALICIOUS HARASSMENT

Tennessee has, by statute, created a cause of action for malicious harassment. Tenn. Code Ann. § 4-21-701. A claim of malicious harassment requires not only that a person acted maliciously but also that the person unlawfully intimidated another from the free exercise or enjoyment of a constitutional right by injuring or threatening to injure or coercing another person. *Washington v. Robertson County*, 29 S.W.3d 466, 473 (Tenn. 2000). Plaintiff must also demonstrate that the offending conduct was motivated by her race, color, religion, ancestry or national origin. *Bowman v. City of Memphis*, 329 S.W.3d 766, 768 (Tenn. Ct. App. 2010). A claim for malicious harassment requires a higher level of harassment than what may be alleged under standard THRA claims. *Blaque v. Renaissance Healthcare Group, LLC*, 2011 WL 5828024 at * 1 (E.D. Tenn. Nov. 18, 2011).

In *Washington*, the court held that governmental entities may be liable under the malicious harassment statute through the traditional doctrine of *respondeat superior*. *Id*. at 476. Other courts, however, have determined that the Tennessee Governmental Tort Liability Act ("TGTLA") provides immunity for the State of Tennessee for malicious harassment claims. *See, e.g., Blakely v. City of Clarksville*, 2007 WL 2258846 at * 1 (6th Cir. Aug. 7. 2007) and *Brown v. City of Springhill*, 2008 WL 974729 at * 7 (M.D. Tenn. April 8, 2008).

The Court need not reach the immunity issue, however, since it finds that Plaintiff has failed to state a claim for malicious harassment based upon Defendants' alleged actions after December 13, 2010. The statements allegedly made to Fort Campbell officers were not harassment of Plaintiff

and do not amount to malicious intimidation from exercise of a constitutional right. Moreover, Plaintiff has failed to present sufficient evidence that any of the alleged statements was based upon her race. The statements were based upon Plaintiff's perceived association with Wentz, not her race.

For these reasons, Defendants' Motions for Summary Judgment on this issue are GRANTED, and Plaintiff's malicious harassment claims against both Defendants are DISMISSED.

## CONCLUSION

For all these reasons, Defendants' Motions for Summary Judgment (Docket Nos. 20 and 22) are GRANTED, and this action is DISMISSED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE