```
                UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF TENNESSEE
                     NASHVILLE DIVISION
```

MARSHA LILLY,                  )
                               )
        Plaintiff              )
                               )       No. 3:10-1178
v.                             )       Judge Campbell/Brown
                               )       **Jury Demand**
CITY OF CLARKSVILLE, *et al.*, )
                               )
        Defendants             )

**TO:   THE HONORABLE TODD J. CAMPBELL**

### REPORT AND RECOMMENDATION

For the reasons stated below the Magistrate Judge recommends that the pending motion for attorneys' fees and costs (Docket Entry 62), which was referred to the undersigned for a report and recommendation (Docket Entry 67), be granted in part and denied in part. Specifically, the Magistrate Judge recommends that costs, as requested by the Defendants be allowed and the request for attorneys' fees, which includes expert witness fees, be denied.

### BACKGROUND

The Plaintiff filed her complaint on December 13, 2010, against the City of Clarksville, the Clarksville Chief of Police Al Ansley, and Police Officer Phil Ashby. The 12-page complaint alleged a wide ranging list of complaints against the City of Clarksville and its police department involving her operation of the 808 Sports Bar and Grill and interfering with her employment with the military police at Fort Campbell, Kentucky. The complaint itself is somewhat long on conclusions and somewhat short on

specific dates, such as when various activities took place. However, it does not appear that the Defendants ever filed a motion for a more specific complaint.

The case was put under a scheduling order on February 7, 2011 (Docket Entry 13). The scheduling order summarized the Plaintiff's case as follows:

> Plaintiff Marsha Lilly was an owner of a sports bar known in the community as '808 Sports Bar and Grille' located in Clarksville, Tennessee. Plaintiff's business sold food and beverages to the general public at large and was duly licensed to sell alcoholic beverages to the public at large. Throughout Plaintiff's operation of '808 Sports Bar and Grille' she was subjected to unlawful harassment and intimidation at the hands of the City of Clarksville, by and through its police department and the individual Defendants, City of Clarksville, Tennessee; Al Ansley, Chief of Police for the City of Clarksville, Tennessee; and Phil Ashby, Police Officer of the City of Clarksville, Tennessee, (Defendants). In particular, the Defendants have targeted Plaintiff and her establishment for closure because of Plaintiff's race and the race of her establishment's clientele.
>
> Defendants, through its police department, have engaged in harassing conduct such as parking patrol cars directly in front of Plaintiff's establishment in an effort to deter the public from patronizing her establishment. On more than one occasion, Plaintiff has confronted officers parked in front of her establishment about why they were there only to be told by the officers that they had 'no reason' to be there. Defendants have

also set up 'roadblocks' on each end of the street that provides ingress and egress to Plaintiff's establishment thereby deterring, and in some instances preventing, the general public from patronizing her establishment.

Defendants, including Defendant Ashby, have also made false statements and accusations in the print and broadcast media about Plaintiff and her establishment. Defendants, including Defendant Ashby, have provided false information to the media that persons have been 'shot' and killed at Plaintiff's establishment and that her establishment was involved in gang and drug related activities in the community. Such statements were false, defamatory, stigmatizing and designed to deter the public from patronizing her establishment.

Plaintiff submits that Defendants have used their positions of authority under state law to institute an official policy and/or practice of harassment and intimidation against citizens of the City of Clarksville in a concerted effort to preclude the Plaintiff's efforts to run a lawful business. As a direct result, Plaintiff was forced to close her business.

Further, Defendants, including Ashby, have made false slanderous and defamatory statements to the public accusing Plaintiff of allowing illegal activity to be conducted in her business as well as accusing her of being personally involved in the same.

Defendants have performed the actions alleged herein described with personal animosity, malice, ill-will towards the Plaintiff because of her race which is unrelated to any legitimate governmental objective in a concerted effort to preclude the Plaintiff from running a lawful business in the City of Clarksville. As such,

Defendants have violated Plaintiff's right to equal protection under the law and her rights under 42 U.S.C. Section 1981.

In or about August of 2009 Plaintiff applied for and received, on a probationary period, the job of Supervisory Criminal Investigator for the Military Police Detachment, Fort Campbell. Her duties included serving as a senior investigator and case agent for sexual and child assault investigations. Criminal Investigators for the Military Police Department at Fort Campbell work in conjunction with the Clarksville Police Department investigating sexual assault and child abuse allegations in the Clarksville area. At some point during her employment, Defendants and their employees/agents contacted Plaintiff's employer and made false and defamatory statements about Plaintiff, including alleging that Plaintiff was engaged in drug and gang related activities. Further, Defendants and their employees/agents told Plaintiff's employer, Fort Campbell, that they would refuse to share investigative material as long as Plaintiff worked for Fort Campbell due to her drug and gang involvement. Plaintiff was placed on administrative leave on or about December 17, 2009. The statements by the Defendants were designed and intended to cause the termination of Plaintiff from Fort Campbell. As a result of these false and defamatory statements, Plaintiff was terminated from Fort Campbell on January 4, 2010.

As a result of the Defendants' action, Plaintiffs' constitutional rights have been violated and she has sustained damages.

Defendants' theory was:

a. City of Clarksville. The Plaintiff has suffered no constitutional deprivation and, as such, any claims against the City of Clarksville must fail. Assuming that the Plaintiff has suffered a constitutional deprivation, which these Defendants deny, nothing in the policies or procedures of the City of Clarksville or Clarksville Police Department resulted in any type of violation of any constitutional rights of the Plaintiff, even if the Plaintiff has articulated any constitutional violations of any other Defendants, which the City of Clarksville denies. To the extent the Plaintiff alleges the City of Clarksville failed to supervise or discipline the individual Defendants in this action, the City of Clarksville's supervision and discipline were adequate and appropriate at all times pertinent. Further, even if the City of Clarksville's supervision and/or discipline of the individual Defendants was in any way lacking, which these Defendants deny, the City of Clarksville was never made aware of any constitutional deprivations as a result of the inadequacy or supervision or discipline prior to the incidents giving rise to this action. The City did not have a policy, practice or custom of harassment or intimidation. The City cannot be liable under a respondent superior theory.

The Defendant City of Clarksville is a governmental entity as defined by the Governmental Tort Liability Act (GTLA) set forth at T.C.A. § 29-20-101, *et seq*. The Defendant is entitled to rely on any and all immunities, defenses, and jurisdictional bars applicable to governmental entities as set forth in the GTLA.

b. Chief Al Ansley. The Plaintiff has not articulated any factual allegations against Defendant Al Ansley except in conjunction with allegations against the

City or more specifically the Clarksville Police Department. The Plaintiff does not allege any individual claims against Chief Ansley and has not alleged any actions by Ansley separate or distinct from her allegations against the City of Clarksville.

  c. Lieutenant Phil Ashby. At all times relevant herein, Ashby acted objectively reasonable in his interactions with the Plaintiff, her employer at Fort Campbell, and her employees and patrons of 808 Sports Bar & Grille. Even if Ashby's actions did represent a deprivation of the constitutional rights of the Plaintiff, which these Defendants deny, Ashby is entitled to qualified immunity as that conduct was not prohibited by clearly established law such that it would be clear to a reasonable officer that such conduct was, in fact, prohibited by law.

  d. Additional Allegations. None of the alleged statements of Defendants constituted defamation. None of the statements harmed Marsha Lilly. The Defendants did not coerce Plaintiff's employer to terminate her employment.

  None of the alleged conduct set out in the Complaint of Plaintiff Marsha Lilly was motivated by the race or color of Marshal Lilly or her patrons at 808 Sports Bar & Grille. None of the alleged conduct in the complaint of Marsha Lilly was damaging to her. None of the alleged conduct in the complaint of Marsha Lilly was damaging to her business professions.

  Any conduct on the part of any person employed by or acting as a representative of the City of Clarksville, in its interaction with the Plaintiff at the dates and times stated in her Complaint, constitute action taken appropriately based upon the Defendants'

6

police duties as stated herein, and the Defendants deny that any conduct on the part of any person employed by or acting as a representative of the City of Clarksville in its interaction with the Plaintiff constituted action taken in any respect toward or against the Plaintiff based upon her race or color or in violation of 42 U.S.C. §§ 1981, 1983, Tennessee Code Annotated § 4-21-701, *et seq*., or any other causes of actions alleged by the Plaintiff.

Marsha Lilly has failed to timely file all or part of her claim as required by statute and to that extent her claim is barred.

Initial disclosures were scheduled to be made by March 9, 2011, and written discovery was to be completed before June 30, 2011. Expert witnesses were to be disclosed by the Plaintiff on or before July 29, 2011, with defense experts disclosed on or before August 29, 2011. The depositions of all fact and expert witnesses were scheduled to be completed by October 28, 2011, with dispositive motions due February 15, 2012. The case was set for a jury trial on July 17, 2012 (Docket Entry 15).

As far as the Magistrate Judge was concerned the case proceeded normally and at a telephone conference with the Magistrate Judge on June 8, 2011, the parties advised that they did not need any changes to the scheduling order and that the Plaintiff's deposition was set for July 29, 2011 (Docket Entry 15). Subsequently, the Plaintiff did move for an extension of the deadlines for depositions of fact and expert witnesses from October 28, 2011, to December 28, 2011 (Docket Entry 16). The Magistrate

7

Judge granted an extension of discovery to December 22, 2011 (Docket Entry 17).

Subsequently, there was a motion *in limine* to prevent the use of an expert by Plaintiff due to an inadequate Rule 26(2)(b) (Docket Entry 18), which the Magistrate Judge granted after the Plaintiff failed to file any response in opposition (Docket Entry 19). In the order granting the motion the Magistrate Judge found that the Plaintiff's expert disclosure was woefully insufficient.

There was no further activity before the Magistrate Judge and the Defendants filed a motion for summary judgment on February 15, 2012, which was the scheduled deadline. The Defendants received permission to file briefs in excess of the normal page limitations. The City of Clarksville brief was 50 pages in length and the brief for Defendants Ansley and Ashby (Docket Entry 24) was 62 pages. The Plaintiff had three motions to extend the deadline for responding and filed a 26-page response to the City of Clarksville's motion for summary judgment (Docket Entry 35), and a 29-page response to the motion by Ansley and Ashby (Docket Entry 42). In both briefs the Plaintiff conceded certain issues and failed to make any argument concerning others as pointed out by the District Judge in granting the motions for summary judgment (Docket Entry 50).

The reply briefs of the City of Clarksville and Ansley and Ashby (Docket Entries 48 and 49) were 20 and 22 pages, respectively. In his memorandum opinion (Docket Entry 50) Judge Campbell noted the items conceded by the Plaintiff and the items

8

that the Plaintiff had not responded to. In his memorandum Judge Campbell did not make any findings that the Plaintiff's claims were made in bad faith. He did, however, find that the Plaintiff failed to show there was sufficient merit in any of the claims to survive summary judgment.

Subsequently, the Plaintiff appealed to the Sixth Circuit. She only appealed the District Court's decision in granting summary judgment on a municipal-liability race discrimination claim (Docket Entry 61). The Sixth Circuit was critical of the Plaintiff's brief and affirmed the District Court's granting of summary judgment without benefit of oral argument. The Defendants subsequently filed a motion for attorneys' fees and costs (Docket Entry 62), which at the request of the Magistrate Judge, were delineated at Docket Entry 71 for costs in the amount of $6,910.60. This sum was made up of $1,910.20 for deposition transcripts and $5,000 for an expert witness fee for their expert Philip Davidson. They advised that for attorneys' fees they billed at the rate of $175[1] per hour, and that their total attorneys' fees request was for $94,570. This motion was thoroughly briefed by the parties and the Magistrate Judge conducted oral argument on the matter on May 29, 2013, as noted in Docket Entry 72.

---

[1] There is no dispute this rate is reasonable.

**LEGAL DISCUSSION**

The parties agree that the Court may allow costs pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure in 28 U.S.C. § 1920. The Plaintiff, however, contends that the costs for the deposition transcripts of the Defendants' employees was unnecessary as their testimony could have been produced by way of affidavits. The Plaintiff argues that therefore transcripts were unnecessary and that the Court has discretion to deny such costs, citing a number of cases (Docket Entry 65, p. 3-4). The Defendants point out that one of the transcripts was the Plaintiff's deposition and that they needed the transcripts of the deposition of their employees in preparing their extensive motions for summary judgment. They make the very reasonable argument that deposition testimony of witnesses is far superior to affidavits since an affidavit may not be used to contradict a deposition. Therefore, in order to prepare their statement of undisputed facts they needed transcripts and did not want to simply rely on affidavits.

The Magistrate Judge finds this argument to be persuasive. It appears that the copies of the transcripts of their witnesses and the costs for the transcripts of the Plaintiff and the other witnesses was both reasonable and necessary to their defense of this case.[2]

---

[2] As the Defendants point out in their reply (Docket Entry 71), the Plaintiff did take the deposition of a number of City employees and it was entirely reasonable for them to secure copies of transcripts of any deposition that the Plaintiff took. It appears that for the depositions the Plaintiff took that the Defendants in fact only ordered copies.

10

Concerning the expert witness fee in the amount of $5,000 for Philip Davidson, the Magistrate Judge following argument by counsel, had originally indicated that he believed an award in the amount of $4,500 would be appropriate. In preparing this report and recommendation the Magistrate Judge has reconsidered this issue. The Defendants have requested this award under 28 U.S.C. § 1920(3). The fee for witnesses under § 1920(3) is limited to the statutory amount for ordinary witnesses 28 U.S.C. § 1821, *L&W Supply Corp. v. Acuity*, 475 F.3d 737 (6th Cir. 2007). In that case the Sixth Circuit noted that the Supreme Court in *Arlington v. Murphy*, 126 S. Ct. 2455 (2006) held that expert witness fees are not recoverable as costs absent explicit statutory authority. *Id*. at 739-41. The Court in *L&W Supply* does note that, while expert fees are not allowable as costs under 28 U.S.C. § 1920 and 1821 and they may be allowed as part of attorney fees where Congress has specifically provided for their recovery. Congress amended 42 U.S.C. § 1988 to provide that expert fees could be allowed by the Court in its discretion as part of an award of attorneys' fees in various enumerated civil right statutes, such as 1983 and 42 U.S.C. § 2000d, *et seq.*

Therefore, the Court may not award expert fees as part of costs, but may award them as part of attorneys' fees.[3]

---

[3] Given the unusual nature of the flat fee charged by the expert, the Magistrate Judge, even if he were awarding fees for experts, would only allow $4,500 as a reasonable amount given the description of the work provided by the expert, Mr. Davidson. Because summary judgment was granted Mr. Davidson did not testify and he was not deposed.

The hardest part of this case is a decision on whether a prevailing defendant in a case of this nature should be allowed attorneys' fees. Both sides agree that the base case for making this decision is *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978). The Supreme Court held that a prevailing defendant in a civil rights case is only entitled to attorneys' fees where the Plaintiff's action was "frivolous, unreasonable, or groundless, or the plaintiff continued to litigate after it clearly became so. *Christiansburg* at 421. The Supreme Court in *Christiansburg* cautioned against applying 20/20 hindsight stating:

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

434 U.S. at 421-422.

Attorneys' fees can be awarded under *Christiansburg* even though the case was not brought or continued in subjective bad faith.

There are numerous cases following *Christiansburg* discussing the awarding of attorneys' fees to prevailing defendants

12

in civil right cases. The Sixth Circuit in *Tahff v. Proctor*, 316 F.3d 584, 596 (6th Cir. 2003) noted that an award of attorneys' fees against the losing plaintiff in a civil rights action is an extreme sanction and must be limited to truly egregious cases of misconduct. A prevailing defendant should only recover upon the findings of a district court that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

The Sixth Circuit in *Riddle v. Egensperger*, 286 F.3d 542 (6th Cir. 2001) stated:

> A plaintiff who continues to litigate claims after discovery has concluded, proceeds to summary judgment, and a judge thereafter rules that the claims are without merit, does not necessarily support the conclusion that the plaintiff's claims were frivolous, unreasonable, or groundless, especially if there are viable claims intertwined to the meritless claims. Even though the claims after discovery are found to be without merit by a court, such a finding does not equate with a determination that the claims were without foundation when the complaint was initially filed. Although the District Court found that there was no evidence to support some of *Riddle*s claims, the District Court noted that discovery was 'necessary' to evaluate Plaintiff's extensive complaint and to prepare the filings 'necessary' to 'obtain' summary judgment. If the underlying claims and Appellants' action were frivolous, Defendants could have used Rule 12(b)(6) to narrow the claims at the onset of the case, rather than engaging in extensive discovery in order to 'obtain' summary judgment. Rule 56 is a tool to narrow the factual and legal issues to be brought to trial but does not necessarily mean that a finding not in favor of a plaintiff means that the plaintiff has no basis for filing a complaint. 'Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation.' *Christiansburg, 434 U.S. at 423, 98 S. Ct. 694.* A potential plaintiff's fear of an increased risk of being assessed attorney fees after extensive

>discovery has taken place and who continues to proceed to a ruling on a summary judgment motion, would create disincentive to the enforcement of civil rights laws and would have a chilling effect on a plaintiff who seeks to enforce his/her civil rights, especially against a government official. *See Dean v. Riser*, 240 F.3d 505, 510 (5th Cir. 2001).

Although the Magistrate Judge believes that the Plaintiff could certainly have acted with more dispatch in abandoning a number of her claims before the Defendants filed their extensive summary judgment motions, the Magistrate judge is unable to conclude that this is a truly exceptional case that warrants the imposition of attorneys' fees on the Plaintiff.

While both the District Judge and the Court of Appeals ruled against the Plaintiff on all aspects of her case the Magistrate Judge fails to find that there were specific findings that the Plaintiff's claims were frivolous, unreasonable, or groundless to the extent that attorneys' fees are justified. The Defendants are correct that the Plaintiff certainly took her own sweet time in taking discovery in the matter and that with more reasonable diligence and attention to this case a number of her claims should and could have been abandoned. However, a review of the case does not show that the Plaintiff's delays and extensions were excessive to the extent that they justify attorneys' fees.

The Defendants could have availed themselves at a much earlier stage of Rule 12(b)(6) or requested more specific pleadings, particularly concerning some of the statute of limitation issues under Rule 12(e).

Although not required by any particular rule, the Defendants could certainly have made a request of the Plaintiff to dismiss a number of her complaints before they filed their summary judgment motion. Had they done this and the Plaintiff refused to drop claims the Magistrate Judge would have been much more inclined to recommend that attorneys' fees be awarded.

## RECOMMENDATION

For the reasons stated above, the Magistrate Judge recommends that costs be awarded in the amount of $1,910.20 and that the request for attorneys' fees, including the expert witness fee, be denied.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

ENTER this 9th day of August, 2013.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge